UNITED STATES DISTRICT COURT
NORTHERN DISTRICT COURT OF NEW YORK

LISA SEEMANN,

                Plaintiff,

**PLAINTIFFS SECOND AMENDED CIVIL COMPLAINT**

-against-                Civil Case No.: **1:17-CV-0901 (GLS/CFH)**

NEW YORK STATE OFFICE OF THE
MEDICAID INSPECTOR GENERAL,
                Defendant.

**JURY TRIAL DEMANDED**

**PRELIMINARY STATEMENT**

1. Plaintiff, Lisa Seemann, brings this action under the Americans With Disabilities Act, 42 U.S.C. §§12101, 12117 and the New York Human Rights Law ("NYHRL"), N.Y. Exec. Law § 290 et seq. for employment discrimination based on a Disability. The Plaintiff alleges that Defendant New York State Office of the Medicaid Inspector General through its employees and agents did discriminate against her based on a Disability by failing to provide her a reasonable accommodation, by treating her in disparate manner based on her disability and retaliating against her for requesting an accommodation. The Plaintiff is now seeking compensatory damages, punitive damages, costs and attorney's fees for the Defendants wrongful conduct.

## JURISDICTION

2. This Court has jurisdiction pursuant to 28 U.S.C. §§1331 and 1343. Plaintiff's claims are brought under the Americans With Disabilities Act, 42 U.S.C. §§12101, 12117. Supplemental jurisdiction exists under the New York Human Rights Law, Executive Law §§292 and 296 et seq.

## VENUE

3. This action properly lies in the Northern District of New York, pursuant to 29 U.S.C. § 1391(b), because the claim arose in this judicial district, and pursuant to 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment practice was committed in this judicial district.

4. On May 19, 2017, the EEOC issued a "right to sue" letters, authorizing plaintiff to commence an action against Defendants within 90 days from receipt of the same. A copy of the right to sue letter is annexed hereto as Exhibit A.

5. This action is commenced within 90 days of plaintiff's receipt of the right to sue letter.

## PARTIES

6. Plaintiff, Lisa Seemann, is a citizen and resident of the United States, State of New York, Schenectady County residing in the Town of Niskayuna.

7. Defendant, New York State Office of the Medicaid Inspector General (herein after "OMIG or Defendant interchangeably") is a New York State Agency doing business in Albany County.

## FACTS

8. The plaintiff was hired by Defendant OMIG as a Senior Attorney 2009.

9. Sometime before 2010 the Plaintiff was diagnosed with a medical condition that resulted in severe to incapacitating migraine headaches.

10. On information and belief, the disability identified above in paragraph #15 is a disability as defined by the Americans with Disability Act of 1990 and by New York State Human Rights Law because it impaired the following major life activities: the ability to work, the ability to sleep etc.

11. The Plaintiff was receiving medical treatment and provided Defendant medical documentation in support of the impairments in #16.

12. The Defendant employer and its agents thereof have been on notice of the Plaintiffs disability since at least 2010 when she first provided the employer with medical documentation of her disability.

13. That the Plaintiffs disability is covered under the Americans with Disabilities Act (ADA) and New York State Human Rights Law (NYHRL).

14. Since 2009 Ms. Seemann was provided the following reasonable accommodations which were also later rescinded by the Defendant employer:

    a) October 13, 2009- Reasonable Accommodation provided with an adjustable dropdown keyboard and mouse tray, a foot rest, gel wrist pad and telephone headset.

    b) November 2, 2009- Reasonable Accommodation provided an ergonomic chair.

    c) November 23, 2010- Reasonable Accommodation approved for a change in work hours from 9:00am to 5:00pm to 8:00am to 4:00pm.

    d) December 20, 2011- Reasonable Accommodation approved to work from home due to "occasional flare-ups of [her] medical condition". (extending until June 20, 2012)

    e) April 12, 2012- Reasonable Accommodation approved to work from home.

15. On or about November 23, 2010, OMIG granted a reasonable accommodation request of Plaintiff's by changing her work hours from 9:00 a.m. to 5 p.m. to 8:00 a.m. to 4:00 p.m. At that time, OMIG requested and received medical documentation to support Plaintiffs need for

this reasonable accommodation. Therefore, Defendant was aware and duly notified of Plaintiffs medical condition(s) and need for an accommodation.

16. With a reasonable accommodation in place the Plaintiff was able to fully perform the essential functions of her job.

17. In June of 2015 the Plaintiff left work on approved sick leave do to her disability.

18. While the Plaintiff was out on leave the Defendant required that the Plaintiff submit to regular documentation from a health care provider to document that she was absent due to her disabilities. Thus, the Defendant was routinely apprised of the Plaintiffs ongoing disabilities

19. On March 22nd, 2016 the Plaintiff was finally permitted to return from her approved sick leave.

20. However, before the Plaintiff was permitted to return to work, on March 17th, the Defendant advised Plaintiff by certified mail that her previous reasonable accommodation of an earlier shift (work hours from 8 am to 4 pm) was being revoked despite her continued disabilities, and that she would be required to work 9 am to 5 pm instead.

21. The Defendant provided no justification nor explanation for the revocation of this accommodation (the accommodation in paragraph 26 above).

22. Upon Plaintiffs return to work on March 22nd, 2016, the Defendant required medical certification from Plaintiff stating that she was fit to return to work "without restrictions".

23. Defendant would not allow the Plaintiff to return to work on March 22nd, 2016 with any restrictions.

24. Upon information and belief, the required certification language and demands in #28 and 29 are in violation of both ADA and NYHRL.

25. On information and belief at the time of her return to work on March 22nd, 2016 the Defendants other similarly situated employees outside of Plaintiffs' protected class were for the sake of their convenience permitted to work the hours of 8 am to 4 pm and other alternate work schedules.

26. Since March 2016 to present, the continued and persistent denial of reasonable accommodation requests by the Defendant, has had a negative impact on the Plaintiff resulting in a detrimental effect on her health and wellbeing and job performance.

27. On information and belief after the Plaintiff went on out sick in 2015 she received a negative performance evaluation for that year in retaliation for taking sick leave and for continued seeking of an accommodation.

28. On information and belief, the Defendant did not even give performance evaluations for other similarly situated employees who were outside Plaintiffs protected class.

29. On Tuesday July 19, 2016 Plaintiff was subjected to harassment by the Defendants Agency Supervisor Sarah Dasenbrock, in a manner that created stress and anxiety, and lead to a panic attack and subsequently Plaintiff had to leave work early; on sick leave. Plaintiff's condition was exacerbated by the Defendant for failing to accommodate Plaintiff's disability and medical condition.

30. On November 4, 2016, Plaintiff returned to work. Two days later and on November 6, 2016 Plaintiff received a Notice of Discipline proposing a twelve (12) week suspension without pay; which conveniently was written the same day the Plaintiff returned from sick leave.

31. Before this Plaintiff had never received a similar disciplinary notice and thus the proposed 12 week suspension was disproportionate to the offense and did not provide a basis for progressive discipline.

32. The Defendant quickly retreated from its proposed 12 week suspension when the Plaintiff contested the allegations and elected to suspend the Plaintiff for only three days.

33. On November 28th 2017 the Plaintiff filed an amended complaint alleging additional acts of retaliation.

34. Three days later on December 1, 2017, Dionne Wheatley a Senior Litigation attorney with OMIG, forwarded an email that was sent to her from Defense counsel.

35. The email referenced in paragraph 35 was forwarded from the Defendants I phone to the Plaintiff with the phrase "FYI" for your information.

36. On information and belief Dionne Wheatley has supervisory authority and/or apparent supervisor authority.

37. Upon receiving the email, the Plaintiff emailed Dionne back stating as follows:

" I arrived at work this morning to your "Fyi" forward of this email from Kyle Sturgess, AAG, to you regarding litigation involving me which you forwarded for unknown reasons. I have not been contacted by the agency about any other matters in this and, as you know, I have an attorney and should not be contacted directly. I am extremely stressed and upset to come in to my work day and to try to begin working and to find this "Fyi" in my inbox. Is this a threat? Is this to scare me? Are you aware of my disabilities? You are well outside your legal ethical bounds to be contacting me directly when I am represented. And I work in the exact same office as you do, and see you and interact with you numerous times each day. I am sending this on to my attorney by copy of this email to add to the complaint of harassment. I am made to feel extremely ill by this. I have done HR litigation work for this agency in the past and never did we 'fyi' the litigant with the fact that papers had been served, with comments from the AAG, and never did

we contact them directly like this. This is unacceptable practice of law and it is further making a hostile workplace environment for me."

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS
### (FAILURE TO ACCOMMODATE UNDER FEDERAL AND STATE LAW)

38. The allegation in paragraphs "1" through "37" are incorporated herein as if set forth in full.

39. After providing an accommodation to the Plaintiff for several years the Defendant without explanation rescinded Plaintiffs long time provided accommodation, despite notice and a record of the Plaintiff's disabilities. This rescinding of the accommodation is the functional equivalent of a failure to accommodate

40. While Plaintiff did not have to ask for additional accommodations (as the Defendant was on notice of Plaintiffs disability) she nonetheless did make multiple accommodation requests.

41. Starting in or about April 2014, the Defendant unfortunately denied reasonable accommodations to the Plaintiff and subsequently thereafter continued a pattern of denying Plaintiff's many requested and required accommodations.

42. That the Defendants are subject to both state and federal laws prohibiting discrimination based on a disability.

43. All requests for reasonable accommodations came with supporting medical documentation, again placing the Defendant on notice of the Plaintiffs medical condition(s).

44. Despite being put on notice of Plaintiffs Disability and receiving multiple requests for accommodations the Defendant unlawfully and intentionally chose to violate Plaintiff Federal and State Civil Rights.

45. That the defendants discriminated against the Plaintiff based on her disability because they had received several accommodation requests, were on notice of her disability, there was a record of her disability and the Defendant never engaged in interactive process to determine a suitable accommodation for her.

46. That the Plaintiff a person within the meaning of both the ADA and NYHRL in that her disability impairs her ability to work and sleep and other major life functions.

47. That when provided the reasonable accommodation of a change in work hours she was able to perform the essential functions of the job.

48. That the defendants discriminated against the Plaintiff based on her disability because they had received several accommodation requests, were on notice of her disability, there was a record of her disability and the Plaintiffs several accommodation requests after 2015 were nonetheless denied by the Defendant.

49. That the defendants discriminated against the Plaintiff based on her disability because they had received several accommodation requests, were on notice of her disability, there was a record of her disability and the Defendant with no legitimate nondiscriminatory reason took the tangible employment action of giving the Plaintiff a negative performance review.

50. That the Defendant not only failed to accommodate the Plaintiff's disability but in fact exacerbated her medical disability by and through the conduct of their supervisor Sarah Dasenbrock.

**AS AND FOR A SECOND CAUSE OF ACTION**
**(DISPARITE TREATMENT UNDER FEDERAL AND NY LAW)**

51. The allegation in paragraphs "38" through "50" are incorporated herein as if set forth in full.

52. That the Defendants engaged in disparate treatment of Plaintiff based on her disability when it allowed similarly situated employees outside of Plaintiffs protected class change their work schedule from 9:00 to 5:00 to 8:00 to 4:00.

53. That the Defendants engaged in disparate treatment of Plaintiff based on her disability when it gave her an annual performance reviews whereas it did not give similarly situated employees outside of Plaintiffs protected class an annual performance review.

54. That the Defendant engaged in disparate treatment of Plaintiff based on her disability when it gave her a three suspension without pay whereas it did not suspend similarly situated employees outside of Plaintiffs protected class for similar offenses.

55. That the Defendant engaged in disparate treatment when Dionne Wheatley forwarded an email from her I phone the Attorney General's office to the Plaintiff which did discuss how the plaintiffs case was allegedly flawed.

56. On information and belief Dionne Wheatley has not sent such emails to other similarly situated employees outside Plaintiffs protected class.

## AS AND FOR A THIRD CAUSE OF ACTION
### (RETALIATION UNDER FEDERAL AND NY LAW)

57. The allegation in paragraphs "51" through "56" are incorporated herein as if set forth in full.

58. On or about May 25th, 2016 only two (2) months after Plaintiffs return to work due to her disabilities, Defendants retaliated against Ms. Seemann for engaging in the protected activity of seeking an accommodation. The Defendant retaliated against her by rating her unsatisfactory on her 2015 performance evaluation.

59. On information and belief, the unsatisfactory performance evaluation had a monetary impact on the Plaintiff and was for the period of 9/14/14-5/24/16.

60. On information and belief, the negative evaluation period included the time period in which the Plaintiff was out of work on medical leave.

61. Defendant retaliated against Plaintiff when after returning from sick leave in November of 2016 it commenced a disciplinary action against her which resulted in her suspension without pay for 3 days. This disciplinary action was in retaliation for the Plaintiff's seeking of an accommodation in March of 2016.

62. Defendant retaliated against Plaintiff when on December Dionne Wheatley forwarded an email from OMIG's counsel which stated that the Plaintiff had amended her complaint and that the amendment could be dismissed.

63. The email was sent 3 days after the Plaintiff filed her amended complaint and less than 4 months after she filed her federal complain of ADA discrimination. Filing a federal complaint and amended complaint are both protected activities under the ADA and NYHRL. The temporal proximity between the protected activity and retaliation in theses instance is very short.

64. A reasonably jury could find that Defendant retaliated against Plaintiff for filing and amending her complaint to allege new charges of retaliation. A reasonable jury could also find that Dionne Wheatley was attempting to intimidate and deter the Plaintiff from pursuing the protections under the ADA and NYHRL.

### AS AND FOR A THIRD CAUSE OF ACTION
### HOSTILE WORK ENVIRONMENT

55. The allegation in paragraphs "57" through "64" are incorporated herein as if set forth in full.

56. As alleged throughout this complaint the Defendants created a hostile work environment based upon Plaintiffs disability when Plaintiffs supervisor harassed her when seeking an accommodation, when she returned to work after being out on leave for her disability and when supervisor Wheatley. This discriminatory conduct was sufficiently severe because on information and belief it pervaded the work place such that the terms and conditions of the Plaintiffs employment were altered for the worse.

# AS AND FOR A FOURTH CAUSE OF ACTION
## (PENDENT STATE CLAIMS)

57. The allegation in paragraphs "55" through "56" are incorporated herein as if set forth in full.

58. That the conduct of the Defendant and it's employees as alleged throughout the complaint violate New York Human Rights Law §§292 and 296 et seq.

59. That as the Defendant's conduct is in violation of §§292 and 296 et seq. the Plaintiff is entitled to compensatory and punitive damages in an amount to be proven at trial.

**WHEREFORE**, plaintiff respectfully requests that this court enter a judgment:

1. Declaring that the acts and practices complained of herein are in violation of the Americans With Disabilities Act, 42 U.S.C. §§12101, 12117 and 42 U.S.C. §1981a. and the New York Human Rights Law ("NYHRL"), N.Y. Exec. Law § 290 et seq. for employment discrimination based on a Disability. Title VII of the Civil Rights Act of 1964 and constitute the basis for awarding back pay with interest, compensatory damages, other lost benefits, and such other further relief as to this Court seems just and proper including but not limited to ordering that Defendant provide Plaintiff a reasonable accommodation.

2. Award to the Plaintiff Lisa Seemann compensatory damages in each cause of action in an amount to be proven at trial.

3. Award to the Plaintiff exemplary damages in each cause of action in an amount to be proven at trial.

4. Award plaintiff the costs, disbursements and attorney's fees for the prosecution of this matter along with such other and further relief as the Court may deem just and proper.

5. Award damages under state and federal law in such way as to maximize the Plaintiffs possible award. In the Second Circuit, various courts at their discretion have awarded all punitive damages under federal law and compensatory damages under state law. Under New York State law there is no cap on compensatory damages in sexual discrimination cases but punitive damages are not recoverable.

DATED: December 1, 2017          LAW OFFICE OF PATRICK SORSBY PLLC

By   S/
Patrick Sorsby
Bar Roll No.: 517840
Attorney for Plaintiff
1568 Central Avenue
Albany, New York 12205
Phone: (518) 456-4529
E-mail: sorsbylaw@gmail.com