UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

LISA SEEMANN,

    Plaintiff,

v.

NEW YORK STATE OFFICE OF THE
MEDICAID INSPECTOR GENERAL,

    Defendant.

**DECLARATION IN SUPPORT OF MOTION FOR A PROTECTIVE ORDER**

Civ. No. 17-cv-0901

(GLS/CFH)

**DIONNE WHEATLEY**, pursuant to 28 U.S.C. §1746, declares the following to be true and correct under penalty of perjury under the laws of the United States of America:

1. I am an Associate Counsel in the counsel's office of the New York State Office of the Medicaid Inspector General ("OMIG" or the "Agency"), the Defendant in the above-captioned action, a disability-discrimination and retaliation claim brought by the Plaintiff, Lisa Seemann (the "Plaintiff"). I have served as an Associate Counsel since September 2014. I offer this Declaration in support of the Agency's pending motion for a protective order seeking the return and destruction of a privileged communication exchange between the Agency's outside counsel (the New York State Office of the Attorney General) and myself, together with the inadvertent disclosure of that communication to the Plaintiff.

2. I make this Declaration on the basis of my own knowledge of and familiarity with the circumstances described herein.

3. The Agency is responsible for ensuring the integrity of the Medicaid program in New York State by investigating and auditing Medicaid providers and recipients to ensure

1

compliance with the program's requirements, and to detect and pursue fraud or waste in the administration of Medicaid funds and other resources. The Agency's mission is carried out through the coordinated work of six major divisions or offices as follows: Executive Office, Office of Counsel, Division of Medicaid Audit, Division of System Utilization and Review, Division of Medicaid Investigations, and Division of Administration.

4. Dennis Rosen is the Medicaid Inspector General ("MIG") for the Agency and is responsible for the overall executive management of the Agency's six divisions including the Office of Counsel that is managed by General Counsel, Janine Daniels Rivera who has served in that capacity since February 2009. General Counsel Daniels Rivera's duties include overseeing all legal and policy matters for the Medicaid Inspector General, representing the agency in administrative hearings and litigation, and hiring and supervising attorneys in the Office. General Counsel Daniels Rivera reports directly to MIG Rosen. I report directly to General Counsel Daniels Rivera. Since my tenure with the Agency I have been assigned to handle labor and employment legal matters on behalf of the agency in addition to Medicaid integrity work. My work is subject to review and approval by General Counsel Daniels Rivera and on occasion by MIG Rosen.

5. The Plaintiff is and has been since 2009 a Senior Attorney in the Agency's office of counsel. In or about October 2016, the Plaintiff filed an administrative charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging generally that she had been discriminated against on the basis of a disability. General Counsel Daniels Rivera assigned me to represent the Agency in the EEOC charge. In March 2017 I prepared and submitted the OMIG's position statement to the EEOC in response to the charge. In or about May 2017, the EEOC dismissed the charge after being unable to conclude that any of the asserted statutory

violations had occurred; and issued the Plaintiff a "right to sue" letter. Subsequently, on or about October 2, 2017 the Agency was served with the instant lawsuit by the Plaintiff, citing some of the same allegations as in her charge.

6. Throughout the course of the fourteen months since the filing of the Plaintiff's initial charge of discrimination with the EEOC, the Agency has consistently followed a practice of not communicating with the Plaintiff about her pending charge and lawsuit, whether in person or through electronic communications. I work in the same Albany work location as the Plaintiff and I see her on a daily basis – in passing and at meetings; she has visited my office on occasion and I have stopped by her office as well. I have never referred to, mentioned, or discussed with the Plaintiff her allegations of discrimination against the Agency. I have repeatedly interacted with the Plaintiff since the filing of her charge and have not had any discussion with her about her ongoing action (prior to, and outside of, the inadvertent exchange described in more detail below). Likewise, personnel in the Agency who have been tasked with responding to the Plaintiff's action against OMIG have been given repeated instruction not to discuss these matters with the Plaintiff, or to otherwise factor the existence of the proceeding into any decision-making with respect to the Plaintiff's assignments, duties, or other terms and conditions of employment.

7. Following service of the Plaintiff's original Complaint in this action, Kyle Sturgess, an attorney with the Attorney General's Litigation Bureau, filed a notice of appearance on behalf of the Agency, and filed the Agency's original Answer. On November 28, 2017, the Plaintiff opted to file an Amended Complaint. Shortly afterward, Mr. Sturgess forwarded me a copy of the Amended Complaint via email (I do not receive notification of new filings directly from the

Court's electronic docketing system) together with a brief email message offering some preliminary commentary on the new filing.[1]

8. I received this email communication on the evening of November 30, 2017, reviewing it on my Agency issued work iPhone while out of the office for an appointment. I have regularly used my work iPhone to review and respond to work related emails. As had been my practice when out of the office to keep my superior General Counsel Daniels Rivera apprised of developments in litigation, I attempted to quickly forward the email to, OMIG General Counsel Janine Daniels-Rivera, with a simple "fyi" ("for your information") notation. My iPhone-based email uses an "auto-populate" feature that supplies previously-used email addresses in the address line based upon the first letter or letters entered by the sender. The Outlook application on the iPhone also "auto-groups" together emails that appear to be related or have similar subject headings.

9. It is my belief that I accidentally struck the "L" key while attempting to enter the letter "J," as a way to bring up the General Counsel's email address. (Email addresses at OMIG use a "first name [dot] last name" format, preceding the agency address of "@omig.ny.gov," so that hitting the "L" key would likely have "auto-populated" the address of the Plaintiff.) I then typed "fyi" into the body of the email and forwarded Mr. Sturgess' communication.

10. At no point in time did I intend to forward the contents of this communication to the Plaintiff, or indeed to any individual outside of the General Counsel herself. Certainly, I did not intend to waive any form of attorney-client or attorney work-product privilege through the

---

[1] My limited description of this communication is offered *solely* in support of the pending motion for a protective order and with no intention of effecting a waiver of privilege regarding the content of the exchange; the Agency continues to assert its claim to privilege with respect to this and any other attorney-client communications that have occurred, or will occur, in the context of this litigation.

4

forwarding of the email to an address that in my haste I believed to be my superior's. Indeed, as a measure to prevent inadvertent waivers of any kind of confidentiality or privilege, original emails from attorneys in the Agency's counsel's office are accompanied by a "Confidentiality Notice" following any signature block, advising the recipient that the email may contain confidential material (including privileged material); instructing unintended recipients that disclosing or acting upon the contents of the email is prohibited; and asking unintended recipients to notify the associated sender and delete the original message. The forwarded message was at all times intended to remain an attorney-client exchange regarding a court filing by an adversarial party.

11. I learned the following morning—via a long responsive email from the Plaintiff— that the *Plaintiff*, rather than Ms. Daniels-Rivera, had been the unintended recipient of my email forward. I promptly responded to the Plaintiff by email (as I was out of the office that entire day) within approximately 45 minutes, assuring her that she was an unintended recipient; apologizing for the error; and asking her to delete my original email forward in keeping with the "Confidentiality Notice" language described above. It is my understanding that the Agency's General Counsel spoke personally to the Plaintiff prior to the end of the day, and reiterated both my apology to her as well as the unintended nature of her receipt of the communication.

12. Despite this, the Plaintiff immediately filed a Second Amended Complaint, augmenting several of her claims with allegations deriving directly from my inadvertent email forward.

13. Those allegations and their corresponding claims are meritless, in that there was never any harassing, discriminatory, or retaliatory motivation behind my purely accidental email forward. More to the point, however, the email exchange between the Agency and its outside counsel should be subject to a protective order prohibiting the communication's use in the

substantive conduct of this litigation, including in discovery and at trial, because there was, as I have stated above, no intent whatsoever to effect any waiver whatsoever of *any* applicable privilege that the communication should have enjoyed, including the attorney-client communication privilege. The accidental communication with the Plaintiff, in this case, was nothing more than a byproduct of the fact that, in haste, the Plaintiff's contact information (which—due to her position and my need to communicate with her about work-related matters, is subject to convenience features like "auto-populating" of addresses) appears to have been erroneously entered into an address line.

14. Upon discovery of the accidental communication with her, moreover, both I and the Agency took steps to undo the effects of the error, including affirming to the Plaintiff (herself an attorney) her "unintended recipient" status, and requesting her compliance with the terms of the "Confidentiality Notice" appended to Agency attorney email messages. (The Agency's outside counsel further requested these measures in a letter dated December 1, 2017 to the Plaintiff's counsel.) Since the accidental disclosure, I have also sought to identify individuals whose addresses can be lumped into single email groups for purposes of communicating about the Plaintiff's litigation, thereby minimizing the risk of inadvertent communication directly to the Plaintiff herself.

15. In view of all of the foregoing, I respectfully request that the Court grant the Agency's request for a protective order with respect to the at-issue November 30, 2017 email communication described above.

Dated: December 15, 2017

*[signature]*
DIONNE A. WHEATLEY, ESQ.
Associate Counsel
Office of the Medicaid Inspector General